**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| DON KING PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> LA UNION DE TODOS, ET AL., <br><br> Defendant. | CIV. NO. 04-2087 (PG) |

**OPINION AND ORDER**

Before the Court is plaintiff's motions for judgment by default against defendants Moca's Place (a/k/a Moca's Pub), Francisco Anavitarre, Conjugal Partnership Anavitarre-Doe d/b/a Moca's Place, El Castillo, Joaquín Tirado Cintrón, Conjugal Partnership Tirado-Doe d/b/a El Castillo, La Canoa, David Torres Martínez, Conjugal Partnership Torres-Doe d/b/a La Canoa, Grand Slam Sport Bar, Guillermina Chevere, Conjugal Partnership Doe-Cheverre d/b/a Grand Slam Sport Bar, Golden Marlin Pub, Harry Placido Suarez, Conjugal Partnership Placido-Doe d/b/a Golden Marlin Pub, La Muralla de Tin (a/k/a Salon Billar La Muralla de Tin), Freddy Nunez, Conjugal Partnership Nunez-Doe d/b/a La Muralla de Tin, Checkers, Luis Natali, Conjugal Partnership Natali-Doe d/b/a Checkers, Cafetería Román, Ramonita Reyes (a/k/a Ramona Reyes), Conjugal Partnership Doe-Reyes d/b/a Cafeteria Roman, Eliezer Roman-Rodriguez d/b/a Cafeteria Roman, Conjugal Partnership Roman-Doe d/b/a Cafeteria Roman. (Docket Nos. 50 & 84[1].) Having reviewed the record and the applicable case law, the Court hereby **GRANTS IN PART** plaintiff's Motions for Default Judgment (Docket Nos. 50 & 84) and awards damages as herein stated.

**DEFAULT JUDGMENT STANDARD**

Fed.R.Civ.P. 55 governs the entry of default judgments in federal court. See Don King Productions, Inc. v. Otero, No. Civ. 04-2155, 2005 WL 2138807 at *4 (D.P.R. Sept. 1, 2005). Particularly, Fed.R.Civ.P. 55(a) authorizes a court to enter a default judgment against a party who has "failed to plead or otherwise defend" an action. Otero, 2005 WL 2138807 at *4-5("the party wishing

---

[1] Plaintiff also moved for default judgment against defendants Sport Bar, Juan Reyes Deida, and the Conjugal Partnership Martinez-Doe d/b/a Sport Bar, but later settled all claims with these defendants a moved to dismiss the case against them. (Docket No. 58) Partial Judgment was entered accordingly (See Docket Nos. 63 & 64.)

Civil No. 04-2087(PG)                                                    Page 2

to obtain a default judgment must apprise the court that the opposing party has failed to plead or otherwise defend by requesting by affidavit or otherwise that the clerk enter default on the docket)(internal quotation marks omitted). Once default has been entered against a defendant, the "party entitled to a judgment by default shall apply to the court therefor." Fed.R.Civ.P. 55(b)(2). See Otero, 2005 WL 2138807 at *5. See also 10 C. Wright, A. Miller, M. Kane, Federal Practice and Procedure: Civil § 2681, at 402 (2d ed.1983)(The default rule serves to protect a diligent party "lest he be faced with interminable delay and continued uncertainty as to his rights.") When considering a motion for default judgment, "a court may examine a plaintiff's complaint to determine whether it alleges a cause of action... [and] must assume that all well pleaded factual allegations are true." Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992). The Court thus culls the relevant facts from plaintiff's complaint.

## FACTS ALLEGED

Don King Productions, Inc. was the producer and copyright holder of the closed-circuit telecast of the December 13-14, 2003 Championship boxing match between Bernard Hopkins v. William Joppy and Ricardo Mayorga v. Corey Spinks, ("the Event") including undercard or preliminary bouts at closed-circuit locations such as theaters, arenas, bars, clubs, lounges, restaurants and the like throughout Puerto Rico. (Docket No. 113, Fourth Amended Complaint at 6-7 ¶ 24.) Don King Productions, Inc. produced the Event for the purpose of distributing for a commercial gain the closed-circuit broadcast of the Event to various business establishments throughout Puerto Rico. (Id., at 7 ¶25.) The closed-circuit broadcast of the Event was not intended for the use of the general public. In Puerto Rico, the closed-circuit broadcast of the Event could only be exhibited in a commercial establishment if said establishment was contractually authorized to do so by Don King Productions, Inc. (Id., at 7 ¶26.) The transmission of the Event was electronically coded or "scrambled". In order for the signal to be received and telecast clearly, it had to be decoded with electronic decoding equipment. (Id., at 7 ¶28.)

Don King Productions, Inc. marketed and distributed the closed-circuit rights to the Event. Specifically, Don King Productions, Inc. contracted with various establishments throughout Puerto Rico and granted to such establishments the right to broadcast the Event in exchange for a fee. (Id., at 7 ¶27.) The establishments were provided with the electronic decoding

Civil No. 04-2087(PG)                                                               Page 3

equipment and satellite coordinates necessary to receive the signal of the Event. (Id., at 8 ¶30.)

The transmission of the Event was available to the defendants for purchase to broadcast in defendants' establishments. Had they done so, they would have been authorized to receive, transmit and publish the Event in their establishments. Defendants did not, however, contract with Don King Productions, Inc. to obtain the rights to broadcast the Event. (Id., at 7-8 ¶29.) Indeed, defendants were not authorized to intercept, receive or transmit the communication of the Event or to assist in such actions in any form or at any time. (Id., at 9 ¶35.)

Before December 13-14, 2003, defendants advertised that they were to exhibit the Event, even though they had not sought permission to do so. On December 13-14, 2003, in violation of Don King Productions, Inc.'s rights and federal and state law, the defendants willfully intercepted and/or received the interstate communication of the Event. In the alternative, defendants assisted in the receipt of the interstate communication of the Event. The defendants then transmitted, divulged and published the communication, or assisted in transmitting, divulging and publishing the communication, to patrons within defendants' establishments. Defendants misappropriated Don King Productions, Inc.'s licensed exhibition of the Event and infringed upon Don King Productions, Inc.'s rights while avoiding proper payment to Don King Productions, Inc. Defendants' purpose and express intent was to secure a financial gain and to advertise their goods, products or services. ((Id., at 8-9 ¶31 & ¶32.) Defendants' unauthorized exhibition of the telecast of the event caused substantial damage to Don King Productions, Inc. (Id., at 9 ¶36.)

Upon reviewing plaintiff's complaint the Court finds that it has alleged sufficient facts in support of its claim against the defendants for violation of the Federal Communications Act.

## **THE FEDERAL COMMUNICATIONS ACT**

The Federal Communications Act of 1934, 47 U.S.C. § 605 et seq. prohibits commercial establishments from intercepting and broadcasting satellite cable programming without a license. It provides a private right of action in federal court. See Kingvision Pay Per View, Ltd. v. Ortega, No. C 02-2716 SI, 2002 WL 31855367, *1 (N.D.Cal. Dec. 16, 2002).

47 U.S.C.A. § 605(a) provide in pertinent part:
> No person receiving, assisting in receiving, transmitting, or assisting in transmitting, any

Civil No. 04-2087(PG)                                                    Page 4

>           interstate or foreign communication by wire or radio
>           shall divulge or publish the existence, contents,
>           substance, purport, effect, or meaning thereof, except
>           through authorized channels of transmission or
>           reception, to any ... person other than the addressee,
>           his agent, or attorney.... No person not being
>           authorized by the sender shall intercept any radio
>           communication and divulge or publish the existence,
>           contents, substance, purport, effect, or meaning of
>           such intercepted communication to any person. No person
>           not being entitled thereto shall receive or assist in
>           receiving any interstate or foreign communication by
>           radio and use such communication (or any information
>           therein contained) for his own benefit or for the
>           benefit of another not entitled thereto. No person
>           having received any intercepted radio communication or
>           having become acquainted with the contents, substance,
>           purport, effect, or meaning of such communication (or
>           any part thereof) knowing that such communication was
>           intercepted, shall divulge or publish the existence,
>           contents, substance, purport, effect, or meaning of
>           such communication (or any part thereof) or use such
>           communication (or any information therein contained)
>           for his own benefit or for the benefit of another not
>           entitled thereto.

47 U.S.C.A. § 605(a).

Pursuant to the statute plaintiff may recover either actual or statutory damages. Here, plaintiff has elected statutory damages pursuant to 47 U.S.C.A. § 605(e)(3)(A)(C)(i)(II).

47 U.S.C. § 605(E)(3)(c)(i)(II) states in pertinent part that "the party aggrieved may recover an award of statutory damages for each violation ... in a sum of not less than $1,000 or more than $10,000, as the court considers just. <u>Id.</u>

### **STATUTORY DAMAGES**

Plaintiff requests against each defendant statutory damages of $10,000 pursuant to 47 U.S.C. § 605(E)(3)(c)(i)(II). Additionally, plaintiff requests that pursuant to 47 U.S.C. § 605(e)(3)(C)(ii)[2] this amount be increased to $100,000.00 or as the Honorable Court's discretion dictates for the defendants' willful violation of the Communications Ac for commercial advantage or private gain.

Pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) the "amount of damages

---

[2] "In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section."

Civil No. 04-2087(PG)                                                              Page 5

assessed pursuant to section 605 rests within the sound discretion of the court." Time Warner Cable of New York City v. Taco Rapido Restaurant, 988 F.Supp. 107, 111 (E.D.N.Y.,1997); see Home Box Office v. Champs of New Haven, Inc., 837 F.Supp. 480, 484 (D.Conn.1993). Indeed, courts have wide discretion in determining the amount of statutory damages and are only limited by the maximum and minimum statutory range, i.e., an award cannot be less than $1,000 or more than $10,000. See Time Warner Cable of New York City, 988 F.Supp. at 111.

Some courts have assessed damages "based on the number of patrons in the establishment at the time of the transmission." Id. (and cases cited therein). Other courts have "simply assessed a flat damage amount per violation. Time Warner Cable of New York City, 988 F.Supp. at 107, see eq. Home Box Office v. Gee-Co. Inc., 838 F.Supp. 436, 440 (E.D.Mo.1993). Notably, courts have declined to award the highest possible statutory damages in the absence of egregious violations. See Home Box Office v. Champs of New Haven, Inc., 837 F.Supp. at 484.

In support of its claim for maximum statutory damages of $10,000, plaintiff only proffers as evidence the affidavits of its investigators the dates of the event. (See Docket Nos. 50, Exhibits, 84, Exhibits). While the affidavits include the capacity and approximate number of patrons at defendants' establishments the dates of the Event they include no information regarding the license fee for legally broadcasting the boxing event[3]. Furthermore, plaintiff does not provide information concerning the amount of expenses saved, profits earned, or lost revenues. Plaintiff simply asserts that as a result of defendants' actions it has

> lost the revenue which would have been derived from the
> delivery and exhibition of the Event to defendants'
> establishments and their patrons, causing substantial
> and irreparable harm, including, but not limited to, a
> loss of revenue and profits, damage to its goodwill and
> reputation, a loss of its substantial investment of
> financial resources, time and effort in the promotion
> of the Event and loss of its right and ability to
> control and receive fees for the reception of the Event.

(Docket No. 113 at 11.)

---

[3] See Kingvision Pay-Pay-View v. Rodriguez, No. 02 Civ. 7972(SHS), 2003 WL 548891 at *2 (S.D.N.Y. Feb. 25, 2003) where the awarded $1,000 for initial amount of damages, because plaintiff's license fee was not provided in evidence).

Civil No. 04-2087(PG)                                                    Page 6

Without any evidence as to the actual or estimated amounts of plaintiff's loss or the cost of the licencee fee, the Court finds that an award $1,000 for each violation is reasonable.

Notwithstanding, the Court has discovered that this is not the first time that some of the defendants here have illegally transmitted similar events in violation of the Communications Act. Particularly, El Castillo[4], Grand Slam Sport Bar[5], and La Muralla de Tin[6]. Given the statutory objective to deter such future violations, International Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2nd Cir. 1993)(citing H.R.Rep. No. 887, 100th Cong., 2d Sess. 14-15, 27-29 (1988) reprinted in 1988 USCCAN 5611, 5642-44, 5657-58), the amount of statutory damages should be increased as to these defendants. See eq. Kinqvision Pay-Per-View, Ltd. v. El Rey Del Bistic y Caridad. Inc., No. 01 CIV. 6562(SHS), 2001 WL 1586667 at *2 (S.D.N.Y. Dec. 12, 2001) (court doubled the initial statutory amount of $1,000 to $2,000 for deterrence purposes).

Having reviewed the motions, the exhibits thereto, as well as the applicable law, the Court awards statutory damages as follows:

As to defendants **Moca's Place (a/k/a Moca's Pub), Francisco Anavitarre, and Conjugal Partnership Anavitarre-Doe d/b/a Moca's Place**, plaintiff includes a copy of the sworn statement of Mr. Juan Andino and Mr. Raúl Castello , who visited Moca's Place and Mr. Francisco Anavitarre's establishment on December 13, 2003 and witnessed defendants' copyrighted transmission being exhibited. (Docket No. 50, Exhibit 1.) They observed around 20 to 30 persons viewing the fight on one television. Defendants did not have a license to show the fight in the manner they did. Having reviewed the record, the Court considers as a just that plaintiff be awarded statutory damages in the amount in the amount of $1,000.00 against these defendants for their unauthorized publication of

---

[4] The Court has found two other cases in which judgment was entered against this defendant for similar violations of the Federal Communications Act. See 3:04-cv-01876-JP, Don King Productions, Inc. v. Perez et al., 3:01-cv-01560-JP, Don King Productions v. Rodriguez, et al.

[5] The Court found another case in which judgment was entered against this defendant for similar violations of the Federal Communications Act. See 3:04-cv-02292-RLA, Don King Productions, Inc. v. Torres Liquor Store et al.

[6] The Court has found another case in which judgment was entered against this defendant for similar violations of the Federal Communications Act. 3:04-cv-01583-JAF, PPV Connection, Inc. v. Jimenez-Rodriguez et al.

Civil No. 04-2087(PG)                                                    Page 7

the communication pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).

As to defendants **El Castillo, Joaquín Tirado Cintrón, Conjugal Partnership Tirado-Doe d/b/a El Castillo**, plaintiff includes a copy of the sworn statement of Mr. Ricardo Flores and Ms. Lydia Fonseca who visited El Castillo and Mr. Joaquin Tirado Cintron's establishment on December 13, 2003 and witnessed defendants' unauthorized transmission and exhibition of the event. The investigators observed between 35 and 40 persons viewing the fight on one television. Defendants did not have a license to show the fight in the manner they did. Having reviewed the record, and in light of defendant Grand Slam Sport Bar recidivism the Court considers as a just that plaintiff be awarded statutory damages in the amount in the amount of $2,000.00 against these defendants for their unauthorized publication of the communication pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).

As to defendants **La Canoa, David Torres Martínez, Conjugal Partnership Torres-Doe d/b/a La Canoa**, plaintiff includes a copy of the sworn statement of Mr. Jorge Ramírez and Mr. David Torres Martinez' who visited La Canoa on December 13, 2003 and witnessed defendants' unauthorized transmission and exhibition of the event. (Docket No. 50, Exhibit 1.) They observed 25 persons viewing the fight on one television. Defendants did not have a license to show the fight in the manner they did. Having reviewed the record, the Court considers as a just that plaintiff be awarded statutory damages in the amount in the amount of $1,000.00 against these defendants for their unauthorized publication of the communication pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).

As to defendants **Grand Slam Sport Bar, Guillermina Chevere, Conjugal Partnership Doe-Cheverre d/b/a Grand Slam Sport Bar**, plaintiff includes a copy of the sworn statement of Ms. Carmen Navarro and Mr. Manuel Morales who visited this establishment on December 14, 2003 and witnessed defendants' unauthorized transmission and exhibition of the event. The investigators observed between 35 and 40 persons viewing the fight on one television. Defendants did not have a license to show the fight in the manner they did. Having reviewed the record, and in light of defendant Grand Slam Sport Bar recidivism the Court considers as a just that plaintiff be awarded statutory damages in the amount in the amount of $2,000.00 against these defendants for their unauthorized publication of the communication pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).

As to defendants **Golden Marlin Pub, Harry Placido Suarez, Conjugal**

Civil No. 04-2087(PG)                                                                Page 8

**Partnership Placido-Doe d/b/a Golden Marlin Pub,** plaintiff includes a copy of the sworn statement of Mr. Ramón Quiñonez and Ms. Yahaira Vargas who visited Golden Marlin Pub on December 13, 2003 and witnessed defendants' unauthorized transmission and exhibition of the event. (Docket No. 50, Exhibit 1.) They observed 15 persons viewing the fight on one television. Defendants did not have a license to show the fight in the manner they did. Having reviewed the record, the Court considers as a just that plaintiff be awarded statutory damages in the amount in the amount of $1,000.00 against these defendants for their unauthorized publication of the communication pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).

As to defendants, **La Muralla de Tin (a/k/a Salon Billar La Muralla de Tin), Freddy Nunez, Conjugal Partnership Nunez-Doe d/b/a La Muralla de Tin**, plaintiff includes a copy of the sworn statement of Mr. Saul Feliciano and Mr. Lizardo Perez who visited La Muralla de Tin and Mr. Freddy Nuñez's establishment on December 13, 2003 and witnessed defendants' unauthorized transmission and exhibition of the event. (Docket No. 50, Exhibit 1.) They observed around 20 persons viewing the fight on one television. Defendants did not have a license to show the fight in the manner they did. Having reviewed the record, and in light of defendants' recidivism the Court considers as a just that plaintiff be awarded statutory damages in the amount in the amount of $2,000.00 against these defendants for their unauthorized publication of the communication pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).

As to defendants **Checkers, Luis Natali, Conjugal Partnership Natali-Doe d/b/a Checkers**, plaintiff includes a copy of the sworn statement of Mr. Ramón Quiñonez and Ms. Yahaira Vargas who visited Checkers and Mr. Luis Natali's establishment on December 13, 2003 and witnessed defendants' unauthorized transmission and exhibition of the event. (Docket No. 50, Exhibit 1.) They observed between 80 to 95 persons viewing the fight on one television. Defendants did not have a license to show the fight in the manner they did. Having reviewed the record, the Court considers as a just that plaintiff be awarded statutory damages in the amount in the amount of $1,000.00 against these defendants for their unauthorized publication of the communication pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).

As to defendants **Cafetería Román, Ramonita Reyes (a/k/a Ramona Reyes), Conjugal Partnership Doe-Reyes d/b/a Cafeteria Roman, Eliezer Roman-Rodriguez d/b/a Cafeteria Roman, and the Conjugal Partnership Roman-Doe d/b/a Cafeteria**

Civil No. 04-2087(PG)                                                    Page 9

**Roman,** plaintiff included a copy of the sworn statement of Mr. Ricardo Flores and Mrs. Lydia Fonseca, who visited Cafetería Román and co-defendants' establishment on December 13, 2003 and witnessed defendants' unauthorized transmission and exhibition of the event. (Docket No. 84, Exhibit 1.) They observed 10 persons viewing the fight on one television. It is undisputed that defendants did not have a license to show the fight in the manner they did. The Court therefore grants plaintiff as against these defendants statutory damages for unauthorized publication of the communication pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) in the amount of $1,000.00.

### **WILLFUL DAMAGES**

Plaintiff has also requested damages for willful violation pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) and 47 U.S.C. § 553(B). Plaintiff seeks damages in the amount $100,000.00 as to each defendant.

"Willfulness" has been defined by the Supreme Court as "disregard for the governing statute and indifference for its requirements." Kingvision Pay-Per-View, Ltd. v. Recio, No. 02 Civ. 6583(JSM)RLE, 2003 WL 21383826, *5 (S.D.N.Y.,June 11, 2003)(quoting TransWorld Airlines. Inc. v. Thurston, 469 U.S. 111, 126-27 (1985); see ON/ TV of Chicago v. Julien, 763 F.2d 839, 844 (7th Cir.1985). "The Federal Communications Commission interprets the term, 'willfully,' as used in other sections of the Communications Act as not requiring that the defendant know that he was acting wrongfully." Primetime 24 Joint Venture v. Telecable Nacional, Civ. A. No. 90-1941, 1990 WL 598572, *2 (D.N.J. Oct. 10, 1990). "It is enough that the defendant knew that "he was doing the acts in question-in short, that the acts were not accidental...." Primetime 24 Joint Venture, 1990 WL 598572, *2(citation omitted).

Courts faced with the issue have considered a number of factors to determine whether a defendant's willful conduct calls for increased damages. Among these factors are the "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; and defendant's charging a cover charge or charging premiums for food and drinks." Kingvision Pay-Per-View, Ltd., 2003 WL 21383826, *5. See eg. Home Box Office v. Champs of New Haven. Inc., 837 F.Supp. 480 (D.Conn.1993); Kingvision Pay-Per-View, Ltd. v. El Rey Del Bistec Y Caridad, Inc., 01 CIV. 6562(SHS), 2001 WL 1586667 at *2(S.D.N.Y. December 12, 2001).

Plaintiff argues that the Court may infer willfulness from defendant's

failure to defend itself. The Court could also assume that defendants' actions were willful because they each took an affirmative action to illegally intercept plaintiff's broadcast using a satellite receiver and/or by using an illegal cable converter box or device. Having reviewed the record, however, the Court finds that to award damages of $100,000 from each defendant would grossly overcompensate plaintiff and would likely put small establishments like defendants out of business. The mere assertion that defendants acted willfully is insufficient to justify enhanced damages. Furthermore, there is no actual evidence that the various defendants advertised the broadcast of the match, or charged a cover charge or premium on food and drinks. Accordingly, the Court will not award plaintiff enhanced damages.

## **ATTORNEYS FEES**

47 U.S.C.A. § 605(e)(3)(B)(iii) states that the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."

Here, plaintiff has requested attorneys' fees and costs as to each individual defendant instead of requesting and omnibus sum. Plaintiff's attorneys have erroneously calculated the amount of fees by duplicating the amount of time invested on tasks that were done only once as to all defendants--i.e., filing the complaint-- and counting them as an individual task as to each defendant. Therefore, in its analysis the Court shall take into account which tasks are omnibus and which apply to a particular defendant and awards fees according.

With regards to the hourly rate, plaintiff's attorneys claims that with the more than twenty years of experience mainly in federal litigation, an hourly fee of $200 an hour is not unreasonable. Recent case law reviewed shows that Courts usually award different rates depending on whether the time was invested in-court or out of court. See Ciudadana v. Gracia-Morales, 359 F.Supp.2d 38, 45 (D.P.R. 2005)(finding rates of $200.00 an hour for out of court work and $225.00 an hour in-court work justified); Rodriguez, 356 F.Supp.2d at 96-97 (finding rate of $190 and $125 to be appropriate); Top Entertainment Corp. v. Torrejon, 349 F.Supp.2d 248, 253 -255 (D.P.R. 2004)(finding hourly rate of $125.00 reasonable); Anywhere, Inc. v. Romero, 344 F.Supp.2d 345, 348 (D.P.R. 2004)(finding rate of $250 to be appropriate for one attorney and rate of $150 per hour, with some hours billed at $75, to be appropriate rates for another less experienced attorney); Vieques

Civil No. 04-2087(PG)                                                    Page 11

Conservation and Historical Trust, Inc. v. Martinez, 313 F.Supp.2d 40, 47 (D.P.R. 2004)(reducing attorney's hourly rate to $225 to equate with local attorneys rates); Tejada-Batista, 263 F.Supp.2d 321, 328 (D.P.R. 2003)(finding rate of $150 per out-of-court hours and $175 per in-court hours in line with the rates prevailing in our legal community). Given that this litigation has required little if any in-court time, the Court shall reduce the hourly rate from $200.00 to $175.00.

Accordingly, the Court grants attorneys fees and costs as follows:

As to the Moca's Place, La Canoa, Grand Slam Sport Bar, Checkers, The Golden Marlin Pub, El Castillo and the La Muralla de Tin defendants **(the Docket No. 50 defendants[7])**, plaintiff's attorneys claim they worked a total of ten (10) hours which included investigating the claim, writing the complaint, the corporate disclosure statement, summonses, motion for entry of default and this motion, which required some research. The ten hours are divided as follows: 2 hours investigating the claim, 3 hours drafting the complaint, the corporate disclosure statement, summons, civil cover, etc., and filing them, 30 minutes preparing and filing the request for default, 3 hours researching 47 U.S.C. §605 case law, and 2.5 hours drafting the motion for default judgment. (Docket No. 50, Exhibit 2.)

As to the Cafeteria Roman defendants[8] **(the Docket No. 84 defendants)**, plaintiff's attorneys state that they worked twelve (12) hours in the case: 2 hours investigating the claim, 3 hours drafting the complaint, corporate disclosure statement, summons, civil cover, etc., and filing them, 1 hour drafting amended pleadings, 30 minutes preparing and filing the request for default, 3 hours researching 47 U.S.C. §605 case law, and 2.5 hours drafting the motion for default judgment. (Docket No. 84, Exhibit 2.)

---

[7]  (1) Moca's Place (a/k/a Moca's Pub), (2)Francisco Anavitarre, (3) Conjugal Partnership d/b/a Moca's Place, (4)El Castillo, (5) Joaquín Tirado Cintrón, (6)Conjugal Partnership Tirado-Doe d/b/a El Castillo, (7)La Canoa, (8)David Torres Martínez, (9)Conjugal Partnership Torres-Doe d/b/a La Canoa, (10)Grand Slam Sport Bar, (11) Guillermina Chevere, (12)Conjugal Partnership Doe-Cheverre d/b/a Grand Slam Sport Bar, (13)Golden Marlin Pub, (14) Harry Placido Suarez, (15)Conjugal Partnership Placido-Doe d/b/a Golden Marlin Pub, (16) La Muralla de Tin (a/k/a Salon Billar La Muralla de Tin), (17) Freddy Nunez, (18) Conjugal Partnership Nunez-Doe d/b/a La Muralla de Tin, (19) Checkers, (20) Luis Natali, (21) Conjugal Partnership Natali-Doe d/b/a Checkers.

[8]  These are: (1) Cafetería Román, (2) Ramonita Reyes (a/k/a Ramona Reyes), (3) Conjugal Partnership Doe-Reyes d/b/a Cafeteria Roman, (4) Eliezer Roman-Rodriguez d/b/a Cafeteria Roman, (5) and the Conjugal Partnership Roman-Doe d/b/a Cafeteria Roman,

It is pellucid that the following tasks: investigating the claim; writing the complaint, the corporate disclosure statement, summonses, civil cover, etc., took place only once. Accordingly the 5 hours invested in these tasks shall be calculated as to all of the defendants, (the Docket No. 50 and Docket No. 84 defendants), and not as to each individual defendant as plaintiff's attorneys would have the Court do.

Therefore,

**5 hours x 175.00 = 875.00 divided among all 26 defendants = $33.65 each**

Likewise plaintiff states he spent $150.00 in the filing fee which is an expense incurred only once. Therefore,

**$150.00 divided among all 26 defendants = $5.77 each**

The other hours and costs pertain to tasks and expenses applicable to the defendants grouped together in each motion for default judgment. Thus, the Court calculates the fees and costs per group.

**THE DOCKET NO. 50 DEFENDANTS**: (Moca's Place, et al.)

Tasks:
- 30 minutes preparing and filing the request for default,
- 3 hours researching 47 U.S.C. §605 case law
- 2.5 hours drafting the motion for default judgment

TOTAL: **6 hours x 175.00 = 1,050.00 / 21 defendants = $50.00 each**

Plaintiff also states it spent $200 for each auditor's visit to these establishments, two per establishment, plus $90.00 per establishment for service of process.

**7 establishments x 400.00 = $2,800.00**
**7 establishments x 90.00 =  $  630.00**
                              **$3.430.00 / 21 defendants = 163.33 each.**

**THE DOCKET NO. 84 DEFENDANTS**: (Cafeteria Roman defendants)

Tasks:
- 1hour drafting amended pleadings
- 30 minutes preparing and filing the request for default,
- 3 hours researching 47 U.S.C. §605 case law
- 2.5 hours drafting the motion for default judgment.

TOTAL: **7 hours x 175.00 = 1225.00 / 5 defendants = $245.00 each**

Plaintiff also states it spent $200.00 for Mr. Flores and Mrs. Fonseca's visit to this establishment and $150.00 for service of process.

**$200.00 + $150.00 = $350.00 divided among 5 defendants = $70.00 each.**

## **CONCLUSION**

The Court awards plaintiff statutory damages as follows:
- **$1,000.00** against defendants Moca's Place (a/k/a Moca's Pub), Francisco Anavitarre, and Conjugal Partnership Anavitarre-Doe d/b/a Moca's Place;
- **$2,000.00** against defendants El Castillo, Joaquín Tirado Cintrón, Conjugal Partnership Tirado-Doe d/b/a El Castillo;
- **$1,000.00** against defendants La Canoa, David Torres Martínez, Conjugal Partnership Torres-Doe d/b/a La Canoa;
- **$2,000.00** against defendants Grand Slam Sport Bar, Guillermina Chevere, Conjugal Partnership Doe-Cheverre d/b/a Grand Slam Sport Bar;
- **$1,000.00** against Golden Marlin Pub, Harry Placido Suarez, Conjugal Partnership Placido-Doe d/b/a Golden Marlin Pub;
- **$2,000.00** against La Muralla de Tin (a/k/a Salon Billar La Muralla de Tin), Freddy Nunez, Conjugal Partnership Nunez-Doe d/b/a La Muralla de Tin;
- **$1,000.00** against Checkers, Luis Natali, Conjugal Partnership Natali-Doe d/b/a Checkers;
- **$1,000.00** against Cafetería Román, Ramonita Reyes (a/k/a Ramona Reyes), Conjugal Partnership Doe-Reyes d/b/a Cafeteria Roman, Eliezer Roman-Rodriguez d/b/a Cafeteria Roman, and the Conjugal Partnership Roman-Doe d/b/a Cafeteria Roman.

**TOTAL AWARD = $11,000.**

Furthermore, the Court awards plaintiff fees and costs as follows:

| | |
|---|---:|
| Moca's Place (a/k/a Moca's Pub), | **$252.42** |
| **$39.42 + $213.00** | |
| Francisco Anavitarre, | **$252.42** |
| **$39.42 + $213.00** | |
| Conjugal Partnership d/b/a Moca's Place | **$252.42** |
| **$39.42 + $213.00** | |
| El Castillo, | **$252.42** |
| **$39.42 + $213.00** | |
| Joaquín Tirado Cintrón, | **$252.42** |
| **$39.42 + $213.00** | |

| | |
|---|---:|
| Conjugal Partnership Tirado-Doe d/b/a El Castillo, **$39.42 + $213.00** | **$252.42** |
| La Canoa, **$39.42 + $213.00** | **$252.42** |
| David Torres Martínez, **$39.42 + $213.00** | **$252.42** |
| Conjugal Partnership Torres-Doe d/b/a La Canoa, **$39.42 + $213.00** | **$252.42** |
| Grand Slam Sport Bar, **$39.42 + $213.00** | **$252.42** |
| Guillermina Chevere, **$39.42 + $213.00** | **$252.42** |
| Conjugal Partnership Doe-Cheverre d/b/a Grand Slam Sport Bar **$39.42 + $213.00** | **$252.42** |
| Golden Marlin Pub, **$39.42 + $213.00** | **$252.42** |
| Harry Placido Suarez, **$39.42 + $213.00** | **$252.42** |
| Conjugal Partnership Placido-Doe d/b/a Golden Marlin Pub, **$39.42 + $213.00** | **$252.42** |
| La Muralla de Tin (a/k/a Salon Billar La Muralla de Tin), **$39.42 + $213.00** | **$252.42** |
| Freddy Nunez, **$39.42 + $213.00** | **$252.42** |
| Conjugal Partnership Nunez-Doe d/b/a La Muralla de Tin, **$39.42 + $213.00** | **$252.42** |
| Checkers, **$39.42 + $213.00** | **$252.42** |
| Luis Natali, **$39.42 + $213.00** | **$252.42** |
| and Conjugal Partnership Natali-Doe d/b/a Checkers **$39.42 + $213.00** | **$252.42** |
| Cafetería Román, **$39.42 + $215.00** | **$254.42** |

Civil No. 04-2087(PG)                                                   Page 15

| | |
|---|---|
| Ramonita Reyes (a/k/a Ramona Reyes) | **$254.42** |
| **$39.42 + $215.00** | |
| Conjugal Partnership Doe-Reyes d/b/a Cafeteria Roman | **$254.42** |
| **$39.42 + $215.00** | |
| Eliezer Roman-Rodriguez d/b/a Cafeteria Roman | **$254.42** |
| **$39.42 + $215.00** | |
| Conjugal Partnership Roman-Doe d/b/a Cafeteria Roman | **$254.42** |
| **$39.42 + $215.00** | |
| **TOTAL AWARD IN FEES AND COSTS** | **$6,572.92** |

    **IT IS SO ORDERED.**
San Juan, Puerto Rico, June 5, 2006.


                                                        S/JUAN M. PEREZ-GIMENEZ
                                                        U. S. DISTRICT JUDGE